IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| MINDY MITCHELL<br>945 Wooddale Drive<br>Urbana, Ohio, 43078 | ) ) ) ) ) ) ) ) ) | CASE NO.:<br><br>JUDGE<br><br>**COMPLAINT** |
| Plaintiff, | ) | |
| v. | ) | **(Jury Demanded)** |
| | ) | |
| HOUCHENS FOOD GROUP, INC.<br>700 Church Street<br>Bowling Green, Kentucky, 42101 | ) ) ) ) | |
| **Serve also:**<br>Houchens Food Group, Inc.<br>1160 Dublin Rd Ste 400<br>Columbus, OH 43215 | ) ) ) ) ) ) | |
| Defendant. | ) | |

Plaintiff, Mindy Mitchell, by and through undersigned counsel, as her Complaint against

Defendant Houchens Food Group, Inc. ("Houchens"), states and avers the following:

## PARTIES

1. Mitchell is an individual residing in Champaign County, Ohio.

2. Houchens is a Kentucky corporation who operates "IGA" grocery stores in and around Ohio,

   to include the IGA located at 534 N Main St, New Carlisle, OH 45344.

## JURISDICTION AND VENUE

3. Houchens hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or

   rents property in Ohio. As such, the exercise of personal jurisdiction over Houchens comports

   with due process.

4. Mitchell performed work in this judicial district, was paid by Houchens, either directly or indirectly, pursuant to work performed in this district and/or was hired out of this district.

5. This cause of action arose from or relates to the contacts of Houchens with Ohio residents, thereby conferring specific jurisdiction over Houchens.

6. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Mitchell's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Mitchell's state law claims under Ohio R.C. § 4112.02(A) against Houchens because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**ADMINISTRATIVE PROCESS**

9. Within 300 days of the challenged conduct referenced herein, Mitchell filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") against Houchens, alleging that Houchens violated her rights under the ADA.

10. The EEOC issued Mitchell a Right to Sue Notice on March 4, 2026.

11. Mitchell has properly exhausted her administrative remedies prior to bringing this action.

**FACTUAL ALLEGATIONS**

12. Houchens operates a grocery market in New Carlisle, Ohio.

13. Mitchell is a former employee of Houchens.

14. Mitchell began her employment with Houchens on or about October 3, 2024.

2

15.  Mitchell worked for Houchens as a Deli Manager.

16.  Mitchell suffers from several disabilities, including fibromyalgia, learning disabilities, and a hernia. ("Mitchell's Disabilities")

17.  Mitchell's Disabilities substantially limit her ability to perform certain major life activities, such as comprehending information, completing paperwork, lifting, pulling, and/or pushing without assistance.

18.  Mitchell's Disabilities are "disabilities" and "physical and/or mental impairment(s)" as those terms are defined by Ohio R.C. § 4112.01(A)(13) and 42 U.S.C § 12102(1)(A) & (B).

19.  Shortly after starting her employment, Mitchell alerted her Store Manager, Eugene Husted Jr., of Mitchell's Disabilities.

20.  As a result of Mitchell disclosing Mitchell's Disabilities, Houchens was aware that Mitchell is disabled and suffers from physical and mental impairments and/or it regarded Mitchell as disabled and/or as suffering from physical and mental impairments.

21.  When disclosing Mitchell's Disabilities to Husted Jr., Mitchell requested assistance with the physically demanding work of unloading trucks due to her hernia ("Accommodation Request").

22.  Husted Jr. granted Mitchell's Accommodation Request and tasked, Teresa Rich, with assisting Mitchell.

23.  Rich was a member of corporate management.

24.  Rich resented being tasked with helping Mitchell.

25.  Shortly after Rich began working with Mitchell to unload trucks, Mitchell apologized to Rich for "being a burden" and explained that she needed help because of her hernia and fibromyalgia.

26. While disclosing her hernia and fibromyalgia to Rich, Mitchell also disclosed her learning disability.

27. Rich responded to Mitchell's learning disability disclosure by stating in a frustrated tone "I don't care" and "so what, you need help with the truck because you're retarded?"

28. Subsequently, Rich continuously expressed frustration with the limits Mitchell's hernia placed on her, as it required Rich to perform additional physical labor.

29. In or around early November 2024, Rich and a co-worker, Robin Nickells, began verbally harassing Mitchell due to her Disabilities.

30. The verbal harassment included comments like "they shouldn't have fucking hired you", and "we don't hire people who can't comprehend their job."

31. When Nickells and Rich noticed that Mitchell was taking longer than usual to complete her paperwork, they asked Mitchell if it was because she is "slow."

32. Rich also began physically harassing Mitchell by throwing heavy objects at her while they were unloading trucks, including heavy boxes filled with goods Rich knew Mitchell could not physically catch without injuring herself and/or aggravating her hernia

33. The verbal and physical abuse from Nickells and Rich was directed at Mitchell on a daily basis.

34. Upon information and belief, making discriminatory remarks or engaging in harassing conduct based upon an employee's disability, physical impairment, or mental impairment violates Houchens's policies ("Anti-Discrimination Policy").

35. Alternatively, it is acceptable under Houchens's policy for workers, including supervisors and managers, to make discriminatory remarks and harass employees based upon an employee's disability, physical impairment, or mental impairment.

36. At all times referenced herein, Houchens maintained a policy requiring it to take allegations of unlawful discrimination and harassment seriously and to investigate any complaints of such unlawful conduct ("Investigation Policy").

37. The Investigation Policy requires Houchens to interview the alleged victim, the alleged perpetrator(s), and any witnesses to the alleged unlawful discrimination and/or harassment.

38. The Investigation Policy requires Houchens to obtain written statements from the alleged victim, the alleged perpetrator(s), and any witnesses.

39. The Investigation Policy requires Houchens to document all interviews conducted during an investigation.

40. The Investigation Policy requires Houchens to take remedial action when an investigation substantiates allegations of unlawful discrimination and/or harassment.

41. The Investigation Policy strictly prohibits retaliation against any individual who reports alleged unlawful discrimination and/or harassment or participates in an investigation.

42. On or about November 18, 2024, Mitchell complained to Houchens's Human Resources Department about Rich's ongoing physical and verbal discrimination based on Mitchell's Disabilities ("Discrimination Complaint").

43. Upon information and belief, and consistent with Houchens's internal reporting and investigation procedures, both Store Manager Eugene Husted Jr. and the Houchens District Manager for the store Mitchell worked in were subsequently made aware of Mitchell's Discrimination Complaint.

44. Houchens failed to follow its Investigation Policy in response to Mitchell's Discrimination Complaint.

45. Houchens did not interview Mitchell in connection with her Discrimination Complaint.

46. Houchens did not interview Rich in connection with Mitchell's Discrimination Complaint.

47. Houchens did not interview Nickells in connection with Mitchell's Discrimination Complaint.

48. Houchens did not interview Husted Jr. in connection with Mitchell's Discrimination Complaint.

49. Houchens did not obtain a written statement from Mitchell in connection with her Discrimination Complaint.

50. Houchens did not obtain a written statement from Rich in connection with Mitchell's Discrimination Complaint.

51. Houchens did not obtain a written statement from Nickells in connection with Mitchell's Discrimination Complaint.

52. Houchens did not obtain a written statement from Husted Jr. in connection with Mitchell's Discrimination Complaint.

53. Houchens did nothing to address Mitchell's Discrimination Complaint.

54. By doing nothing, Houchens ratified and endorsed the discriminatory and harassing abuse Mitchell was being subjected to by her coworkers.

55. On or about December 16th, 2024, Houchens terminated Mitchell.

56. At the time of Mitchell's sudden termination, Houchens did not provide Mitchell with any reason for her discharge.

57. Upon information and belief, the formal decision to terminate Mitchell was made by a Houchens District Manager.

58. Prior to Mitchell's termination, Rich provided negative input, evaluations, and/or reports to Houchens management, including the District Manager, regarding Mitchell's performance, schedule, and/or attendance.

6

59. The negative input and reports provided by Rich were motivated by her discriminatory animus toward Mitchell's Disabilities, including her resentment of Mitchell's hernia-related physical limitations.

60. Rich intended for her biased, negative input to cause Mitchell to suffer an adverse employment action, up to and including termination.

61. The Houchens District Manager relied upon the biased and discriminatory input provided by Rich when making the decision to terminate Mitchell.

62. Because the decision-maker relied on this tainted input, the discriminatory animus of Rich was a proximate cause of Mitchell's termination.

63. After the termination, Husted Jr. informed Mitchell that her termination was driven by Rich after she learned of Mitchell's disabilities and grew frustrated with her limitations and the extra demand they put on Rich.

64. Husted Jr. further advised Mitchell that she should contact an attorney because he understood that "it isn't right to fire someone because of their disabilities."

65. As a result of Houchens's actions, Mitchell suffered and will continue to suffer monetary and emotional damages.

66. At no point prior to her sudden termination did Houchens issue Mitchell any formal write-ups, written warnings, or discipline of any kind regarding her attendance, scheduling practices, or food preparation.

67. By terminating Mitchell without any prior warning, Houchens completely failed to follow standard progressive discipline practices for these alleged, yet unsubstantiated, infractions.

68. Houchens's failure to utilize progressive discipline or contemporaneously document these purported performance issues further demonstrates that its stated reasons for termination are a pretext for unlawful discrimination.

7

69. Houchens terminated Mitchell because of her Disabilities.

70. Houchens terminated Mitchell because of her Discrimination Complaint.

71. As a direct and proximate result of Houchen's unlawful conduct, Mitchell has suffered and will continue to suffer damages.

### COUNT I: HOSTILE WORK ENVIRONMENT BASED ON DISABILITY.

72. Mitchell re-alleges and incorporates by reference the allegations set forth above.

73. Mitchell is a qualified individual with Disabilities, including fibromyalgia, learning disabilities, and a hernia.

74. During her employment, Mitchell was subjected to unwelcome harassment by her coworkers, including Rich and Nickells.

75. This harassment was based on Mitchell's Disabilities and included daily verbal insults, derogatory slurs regarding her learning disability, and physical assaults, such as throwing heavy boxes at her.

76. The harassment was sufficiently severe and pervasive to alter the conditions of Mitchell's employment and create an abusive working environment.

77. Houchens knew or should have known about the harassment, particularly after Mitchell expressly complained to the Human Resources Department on or about November 18, 2024.

78. Despite actual knowledge, Houchens failed to take prompt and appropriate corrective action to investigate the report or end the harassment, in direct violation of its own Investigation Policy.

79. As a direct and proximate result of Houchens's conduct in allowing a hostile work environment, Mitchell has suffered damages, including mental anguish and emotional distress.

## COUNT II: WRONGFUL TERMINATION BASED ON DISABILITY IN VIOLATION OF THE ADA

80. Mitchell re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

81. At all times referenced herein, Houchens knew that Mitchell was disabled and/or regarded Mitchell as disabled.

82. Despite her disabling conditions, Mitchell was fully competent and qualified for the position of Deli Manager, and she was capable of performing her essential job duties with or without reasonable accommodation.

83. Houchens took adverse employment action against Mitchell by terminating her employment.

84. Mitchell's Disabilities were a determining factor and/or the motivating factor in Houchens's decision to terminate her, as evidenced by the discriminatory animus of Rich, whose tainted input proximately caused the termination decision.

85. Houchens's proffered reasons for terminating Mitchell are entirely pretextual.

86. Houchens's wrongful termination of Mitchell violated the ADA.

87. As a direct and proximate result of Houchens's wrongful termination in violation of the ADA, Mitchell has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Mitchell to injunctive, equitable, and compensatory monetary relief.

88. As a further result, Mitchell has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional distress.

89. In its discriminatory actions as alleged above, Houchens acted with malice or reckless indifference to the rights of Mitchell, thereby entitling Mitchell to an award of punitive damages.

90. To remedy the violations of the rights of Mitchell secured by the ADA, Mitchell requests that the Court award her the relief prayed for below.

## COUNT III: WRONGFUL TERMINATION BASED ON DISABILITY IN VIOLATION OF OHIO R.C. § 4112.02(A)

91. Mitchell re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

92. At all times referenced herein, Houchens knew that Mitchell suffered from physical and mental impairments and/or regarded Mitchell as a person with impairments.

93. Despite her disabling conditions, Mitchell was fully competent and qualified for the position of Deli Manager and was capable of performing her essential job duties with or without accommodation.

94. Houchens wrongfully terminated Mitchell because of her Disabilities and/or because it regarded her as having Disabilities.

95. Houchens's proffered reasons for terminating Mitchell are entirely pretextual.

96. Houchens's wrongful termination of Mitchell violated Ohio R.C. § 4112.02(A).

97. As a direct and proximate result of Houchens's wrongful termination in violation of Ohio R.C. § 4112.02(A), Mitchell has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Mitchell to injunctive, equitable, and compensatory monetary relief.

98. As a further result, Mitchell has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional distress.

99. In its discriminatory actions as alleged above, Houchens acted with malice or reckless indifference to the rights of Mitchell, thereby entitling Mitchell to an award of punitive damages.

100. To remedy the violations of the rights of Mitchell secured by Ohio R.C. § 4112.02(A), Mitchell requests that the Court award her the relief prayed for below.

## COUNT IV: RETALIATION IN VIOLATION OF THE ADA

101. Mitchell re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

102. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C § 12203(a).

103. Further, the ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed… any right granted or protected by this chapter." 42 U.S.C § 12203(b).

104. Mitchell engaged in protected activities under the ADA by: (1) requesting a reasonable accommodation for her hernia limitations; and (2) expressly complaining to Houchens Human Resources regarding the disability-based harassment she was suffering.

105. Houchens violated the ADA's anti-retaliation provisions when it responded to Mitchell's protected accommodation requests and complaints of harassment by terminating her employment.

106. A causal connection exists between Mitchell's protected activities and her subsequent termination.

107. As a direct and proximate result of Houchens's retaliation against Mitchell in violation of the ADA, Mitchell has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Mitchell to injunctive, equitable, and compensatory monetary relief.

11

108. As a further result, Mitchell has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional distress.

109. In its retaliatory actions as alleged above, Houchens acted with malice or reckless indifference to the rights of Mitchell, thereby entitling Mitchell to an award of punitive damages.

110. To remedy the violations of the rights of Mitchell secured by the ADA, Mitchell requests that the Court award her the relief prayed for below.

**COUNT V: RETALIATION IN VIOLATION OF OHIO R.C. § 4112.02(I)**

111. Mitchell re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

112. Ohio R.C. § 4112.02(I) makes it an unlawful discriminatory practice for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing.

113. Mitchell engaged in protected activity under Ohio law by requesting a reasonable accommodation for her Disabilities and by reporting the disability-based discrimination and harassment to Houchens Human Resources.

114. Houchens retaliated against Mitchell for engaging in these protected activities by terminating her employment.

115. A causal connection exists between Mitchell's protected activities and her subsequent termination.

116. As a direct and proximate result of Houchens's retaliation in violation of Ohio R.C. § 4112.02(I), Mitchell has been denied employment opportunities providing substantial

compensation and benefits, thereby entitling Mitchell to injunctive, equitable, and compensatory monetary relief.

117. As a further result, Mitchell has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional distress.

118. In its retaliatory actions as alleged above, Houchens acted with malice or reckless indifference to the rights of Mitchell, thereby entitling Mitchell to an award of punitive damages.

119. To remedy the violations of the rights of Mitchell secured by Ohio R.C. § 4112.02(I), Mitchell requests that the Court award her the relief prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mindy Mitchell requests judgment in her favor against Defendant, containing the following relief:

(a) An order directing Defendant to place Mitchell in the position she would have occupied but for Defendant's discriminatory, retaliatory, and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Mitchell;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mitchell for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mitchell for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish, emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, harm to her professional and personal reputation, loss of career fulfillment, and any other physical or mental injuries;

(d) An award of punitive damages;

(e) An award of costs that Mitchell has incurred in this action, as well as Mitchell's reasonable attorneys' fees to the fullest extent permitted by law; and

(f) Awarding such other and further relief that this Court deems necessary and proper.

13

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney for Plaintiff Mindy Mitchell*

## JURY DEMAND

Plaintiff Mindy Mitchell demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

14